IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

---

| | |
|---|---|
| R. KIMBALL MOSIER, in his capacity as Chapter 11 Trustee of NATIONAL SCHOOL FITNESS FOUNDATION and SCHOOL FITNESS SYSTEMS, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>CALLISTER, NEBEKER & MCCULLOUGH, a Professional Corporation, LELAND S. MCCULLOUGH and BRADLEY E. MORRIS,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br><br>Case No. 2:06-CV-677 TS |

---

This matter is before the Court on Defendants four Motions for Summary Judgment,[1] Plaintiff's Motion to Strike,[2] and Defendants Motion to Strike.[3]  As set out fully below, the Court will grant Defendants' Motion for Summary Judgment Re: In Pari Delicto.  Therefore, it is unnecessary for the Court to reach the other pending Motions.

---

[1]Docket Nos. 37, 39, 41, and 43.

[2]Docket No. 98.

[3]Docket No. 147.

1

I.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[4]  In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[5]  The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[6]

II.  UNDISPUTED FACTS

Plaintiff R. Kimball Mosier is the Trustee of National School Fitness Foundation ("NSFF").  He is also the Successor Trustee of School Fitness Systems, LLC ("SFS").

NSFF was organized as a Utah not for profit corporation on April 11, 2000.  NSFF held itself out to be a charitable organization that provided physical fitness equipment and programs to school districts throughout the United States.  NSFF filed an application with the IRS to be designated as a 501(c)(3) tax exempt organization.  SFS was organized as a Utah for profit limited liability company on March 14, 2001, to sell the NSFF physical fitness equipment and programs to school districts throughout the United States.

From July 2001 through April 2004, NSFF utilized a business model referred to as the "Leasing Model."  The Leasing Model worked as follows: (1) NSFF solicited schools to acquire

---

[4]*See* Fed. R. Civ. P. 56(c).

[5]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[6]*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991).

the physical fitness program; (2) SFS entered into a contract, generally called a sales agreement, to sell the physical fitness program to the schools; (3) the schools would finance the acquisition of the physical fitness program through a non-recourse lease, which typically had a three-year term, with an institutional lender; (4) NSFF would enter into a contract, generally called a "contribution agreement," with the school acquiring the physical fitness program from SFS. Under the contribution agreement, NSFF agreed to make monthly payments to the participating school in the amount equal to the monthly payment the school owed to the lender under the non-recourse lease. Under the contribution agreement, NSFF agreed to repay the schools the full purchase price for the physical fitness program over three years. The contribution agreement stated, either expressly or impliedly, that the source of NSFF's payments to the schools was from charitable contributions or government grants; (5) SFS received the proceeds identified in the sales agreement. A portion of these proceeds, approximately 50%, was used to pay vendors who supplied the components of the physical fitness program. Most of the remainder was paid to NSFF in the form of a "royalty." SFS also retained a portion of the sales proceeds for itself; and (6) NSFF used the "royalty" payments to pay its operating expenses and to make the payments it owed under the contribution agreements.[7]

Defendant Callister, Nebeker & McCullough ("CNM") began representing NSFF in approximately November 2003. CNM also individually represented NSFF President Cameron Lewis and NSFF Board member Ty Lewis.

NSFF filed a voluntary bankruptcy petition on June 1, 2004, in the United States Bankruptcy Court for the District of Utah. On July 9, 2004, R. Kimball Mosier, was appointed

---

[7]A full description of the Leasing Model is set out in Plaintiff's Amended Complaint. Docket No. 150, at 3–4.

as Chapter 11 Trustee of NSFF. On November 9, 2004, the Trustee filed an adversary Complaint against Cameron J. Lewis, J. Tyrone Lewis, Lou Andrus, Martin Arnoldini, Dan Clark, Calvin Harper, Ed Pinegar, Marion Marko, and Shanna Black in the Bankruptcy Case (the "D&O Action").[8] Cameron Lewis was the CEO of NSFF; Ty Lewis, Lou Andrus, Martin Arnoldini, Dan Clark, Calvin Harper, and Ed Pinegar were directors of NSFF; Marion Markle was the CFO for NSFF; and Shanna Black was the Treasurer and Administrative Director for NSFF. According to the Trustee, NSFF's directors and officers engaged in wilful misconduct and/or the intentional infliction of harm on NSFF and NSFF was injured as a result.

On February 24, 2005, Defendants filed a proof of claim in the bankruptcy case for alleged unpaid attorneys' fees. On May 30, 2006, Plaintiff filed this case as an action against Defendants in state court, which was later removed. Plaintiff brought claims of professional negligence, breach of fiduciary duty, vicarious liability, and breach of the covenant of good faith and fair dealing. Also on May 30, 2006, Plaintiff filed an objection to Defendants' proof of claim in the bankruptcy case. This Court subsequently withdrew the bankruptcy reference as it relates to Plaintiff's legal malpractice claim, denied Plaintiff's Motion to Remand the action to state court, and consolidated the legal malpractice action and the bankruptcy case as it relates to the malpractice issue.

### III. MOTION FOR SUMMARY JUDGMENT NO. 1 RE: *IN PARI DELICTO*

"The equitable defense of *in pari delicto*, which literally means 'in equal fault,' is rooted in the common-law notion that a plaintiff's recovery may be barred by his own wrongful

---

[8] Docket No. 47, Depo. Ex. 18.

4

conduct."[9]  The doctrine holds that "a plaintiff may not assert a claim against a defendant if the plaintiff bears fault for the claim."[10]  The policy behind the doctrine of *in pari delicto* is that "courts should not lend their good offices to mediating disputes among wrongdoers" and "denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality."[11]

Defendants argue that the doctrine of *in pari delicto* bars Plaintiff from bringing this action against them.  Defendants state that NSFF, through its officers and directors, engaged in a Ponzi scheme.  Defendants argue that under the doctrine of *in pari delicto*, NSFF would be unable to bring claims against the Defendants.  As the Trustee of NSFF, Plaintiff stands in the shoes of the debtor and, according to Defendants, may not bring this action either.  Plaintiff argues that summary judgment is not appropriate because it must be determined which party has greater fault.  Further, Plaintiff argues that the doctrine should not be applied because of public policy or the "innocent successor" exceptions to Section 541 of the Bankruptcy Code.

A.   FAULT OF THE PARTIES

It is undisputed that NSFF, through its officers and directors, engaged in willful misconduct.  The criminal actions taken against NSFF's officers support this conclusion.  Further, in the D&O Action, the Trustee stated that the actions of NSFF's officers and directors constituted willful misconduct and/or the intentional infliction of harm.  The only actions cited by the Trustee which may show fault on behalf of the Defendants is that they allegedly failed to advise NSFF to stop its operations.  As a matter of law, Defendants wrongdoing, if any, was not

---

[9]*Pinter v. Dahl*, 486 U.S. 622, 632 (1988).

[10]*Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340, 354 (3d Cir. 2001).

[11]*Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306 (1985).

greater than that of NSFF, through its officers and directors. The wrongdoing of NSFF, through its officers and directors, is far greater than any wrongdoing on behalf of the Defendants. Plaintiff's attempts to downplay his earlier assertions does not create a disputed issue of fact. Thus, the doctrine of *in pari delicto* bars this action.

B.     INNOCENT SUCCESSOR

The Trustee also argues that the doctrine of *in pari delicto* should not be applied to him as a result of the innocent successor doctrine. The Tenth Circuit, as well as a number of other courts, however, have clearly rejected this argument. The Tenth Circuit has held that "Congress intended the trustee to stand in the shoes of the debtor and 'take no greater rights that the debtor himself had.'"[12] As a result, the Trustee "may not use his status as trustee to insulate [NSFF] from the wrongdoing of" its officers and directors.[13] Several other courts have concluded that the defense of *in pari delicto* may be asserted against a bankruptcy trustee.[14]

C.     CONCLUSION

By Plaintiff's own admissions, NSFF, acting through its officers and directors, engaged misconduct and/or the intentional infliction of harm. As a matter of law, any wrongdoing on behalf of the Defendants was substantially less than that of NSFF. As a result, the Trustee, standing in the shoes of NSFF, is barred from bringing this action under the doctrine of *in pari delicto*. This conclusion is supported by a recent ruling by this Court per Chief Judge Campbell

---

[12]*In re Hedged-Investments Assocs., Inc.*, 84 F.3d 1281, 1285 (10th Cir. 1996) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 368, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6323)).

[13]*Id.*

[14]*See Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1151 (11th Cir. 2006) (collecting cases).

in a related case.[15] In that case, the Court granted summary judgment in favor of another law firm which had advised NSFF with respect to the Leasing Model.[16] For the same reasons discussed in that case, and the reasons stated above, the Court will grant Defendant's Motion for Summary Judgment here.

## IV. CONCLUSION

It is therefore

ORDERED that Defendants' Motion for Summary Judgment No. 1 Re: In Pari Delicto (Docket No. 37) is GRANTED. It is further

ORDERED that the hearing set for October 16, 2007, is VACATED.

The Clerk of the Court is directed to enter judgment in favor of Defendants and against Plaintiff and close this case forthwith.

DATED   October 9, 2007.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[15] *Mosier v. Ray Quinney & Nebeker, P.C.*, No. 2:06-CV-519 TC, 2007 WL 2688245 (D. Utah. Sept. 11, 2007).

[16] *Id.*